# In the United States Court of Federal Claims

No. 07-525 C

(E-Filed: February 20, 2009)

| | |
|---|---|
| SHANNON M. GARNER, ET AL., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>Defendant. )<br>) | Motion for Judgment on the Pleadings Pursuant to RCFC 12(c); Facts Indistinguishable from Facts in <u>Adams II</u>; No Change In Applicable Substantive Law Since <u>Adams II</u> |

<u>Jules Bernstein</u>, Washington, DC, for plaintiffs.  <u>Linda Lipsett</u>, Washington, DC, and <u>Edgar James</u>, Washington, DC, of counsel.

<u>Shalom Brilliant</u>, Washington, DC, with whom were <u>Gregory G. Katsas</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Todd M. Hughes</u>, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  <u>Michael J. Dierberg</u> and <u>William P. Rayel</u>, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, of counsel.

ORDER

I.   Background

Plaintiffs in this action are employees of the United States of America (United States or government or defendant) employed by the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA) as "Diversion Investigators." Complaint (Compl.) ¶ 1.  On July 13, 2007 plaintiffs filed their Complaint in this court, "seek[ing] to recover from defendant back pay, liquidated damages, interest, attorney's

fees and costs pursuant to the Fair Labor Standards Act of 1938 [(FLSA)], as amended, 29 U.S.C. [§§ 201-219]."  Id.  Plaintiffs allege that from 2004 until the date of the filing of their complaint defendant had inappropriately labeled them as exempt employees under the FLSA and thereby withheld from them "pay and benefits due . . . under the FLSA."  Id. ¶ 7.  Plaintiffs request that defendant be ordered "to conduct a full, complete and accurate accounting of all back overtime, premium and other pay, leave, holiday and excused and other paid absence compensation, and benefits, interest and liquidated damages . . . to plaintiffs . . . from 2004."  Id. ¶ 20(a).

In the parties' Joint Preliminary Status Report (JPSR), filed on November 2, 2007, plaintiffs and defendant stated that:

> The parties believe there is a reasonable likelihood of settlement on the issue of whether certain plaintiffs are exempt from the FLSA as well as a likelihood that the amount of damages due [to each] plaintiff[] can be resolved.  It is unlikely that parties will resolve through settlement <u>whether plaintiffs are entitled to be compensated for driving a Government-owned vehicle from home to work and work to home</u>.

JPSR 4 (emphasis added).  The parties have not yet settled.  However, a Joint Status Report (JSR), filed on July 7, 2008 states that "the parties have discussed the manner in which payments [for non-driving claims] should be calculated based upon a previously negotiated settlement which would apply to this case and 12 other cases involving similar claims."  JSR 2.

On the same date that they filed their Complaint, July 13, 2007, see Compl. 1, plaintiffs also filed with the court a Notice of Indirectly Related Cases (Not. of Indirectly Related Cases), stating that this case is "indirectly related to [Adams v. United States (Adams I), 65 Fed. Cl. 217 (2005)] . . . which [was] currently pending in the United States Court of Federal Claims, <u>the outcome of which is likely to call for a determination of the same or substantially similar questions as are presented in the instant case</u>."  Not. of Indirectly Related Cases 1-2 (emphasis added).  In Adams I, several thousand government employees brought "overtime pay claims for time spent driving to and from work in government-issued vehicles."  Adams I, 65 Fed. Cl. at 219.  After the United States Court of Federal Claims (USCFC) determined that these driving claims were non-compensable under the FLSA, id. at 241, the Adams I plaintiffs appealed to the United States Court of Appeals for the Federal Circuit (Federal Circuit), Adams v. United States (Adams II), 471 F.3d 1321 (Fed. Cir. 2006).  On December 18, 2006 the Federal Circuit upheld the USCFC decision in Adams I and held that, according to precedent set in Bobo v. United States (Bobo), 136 F.3d 1465 (Fed. Cir. 1998), "commuting done for the employer's

benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimis." Adams II, 471 F.3d at 1328. The Federal Circuit found that the Adams II plaintiffs' driving claims were de minimis and were therefore properly denied. Id. The Federal Circuit's decision in Bobo–holding that an employee's driving of an employer's vehicle to and from work was not compensable under the FLSA, Bobo, 136 F.3d at 1468–was based on the Portal-to-Portal Act of 1947 (Portal-to-Portal Act), Pub. L. No. 80-49, 61 Stat. 84 (codified at 29 U.S.C. §§ 251-262 (2006)), a Congressionally-enacted exception to the FLSA.[1] See Bobo, 136 F.3d at 1467-68. The Adams II plaintiffs' petition for rehearing en banc was denied, Adams v. United States, 219 F. App'x 993 (Fed. Cir. 2007) (table), as was their petition for a writ of certiorari, Adams v. United States, 128 S. Ct. 866 (2008).

On July 23, 2008 defendant filed Defendant's Motion for Judgment on the Pleadings, Dismissing "Driving Time" Claims (defendant's Motion or Def.'s Mot.), requesting that the court dismiss plaintiffs' driving claims pursuant to Rule 12(c) of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot. 1. Defendant contends that plaintiffs' driving claims are controlled by the precedent of Adams II and are therefore non-compensable as a matter of law. See id. at 2. On August 25, 2008 plaintiffs filed Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings, Dismissing "Driving Time" Claims (plaintiffs' Response or Pls.' Resp.), arguing that: (1) plaintiffs' "home/work driving is 'integral and indispensable' to the

---

[1] The Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84 (codified at 29 U.S.C. §§ 251-262 (2006)), amended by the Employee Flexibility in Commuting Act of 1996, Pub. L. No. 104-188, § 2102, 110 Stat. 1755, 1928, now states, in relevant part:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act [(FLSA)] . . . [for] failure . . . to pay an employee minimum wages, or to pay an employee overtime compensation, for . . . (1) walking, riding, or <u>traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform</u>, and (2) activities which are preliminary to or postliminary to said principal activity or activities . . . . For purposes of this subsection, <u>the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment</u> and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (emphases added).

3

performance of their duties," Pls.' Resp. 2; (2) "the reasoning in Adams [II] has been entirely nullified by the Supreme Court's decisions in Long Island Care at Home, Ltd. v. Coke (Coke), 127 S. Ct. 2339 (2007) . . . and National Cable & Telecommunications Ass['n] v. Brand X Internet Services (National Cable), 545 U.S. 967 (2005)," id. at 4; (3) Billings v United States, 322 F.3d 1328 (Fed. Cir. 2003), requires the court to defer to Department of Labor (DOL) regulations, id. at 19-20; (4) "the Employee Commuting Flexibility Act [(ECFA)] supports plaintiff's entitlement to compensation," id. at 22; (5) "[s]tare [d]ecisis does not apply," id. at 32; and (6) the denial of the Adams II petitioners' "writ of certiorari and petition for rehearing en banc do not constitute affirmance of the Federal Circuit Panel's decision in Adams," id. at 34.  Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings, Dismissing "Driving Time" Claims (defendant's Reply or Def.'s Reply) was filed, by leave of court, on November 6, 2008.

II.     Discussion

   A.     Standard for RCFC 12(c) Judgment on the Pleadings

RCFC 12(c) permits a party to seek judgment based on a complainant's pleadings.  RCFC 12(c).  The rule states: "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."  Id.  "A motion for judgment on the pleadings should be denied unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim."  Branning v. United States, 215 Ct. Cl. 949, 950 (1977) (discussing a predecessor rule to RCFC 12(c)).  "[R]egardless of whether the trial court is convinced that the plaintiff is unlikely to prevail at trial, the court should only grant a defendant's motion for judgment on the pleadings if the defendant is clearly entitled to judgment on the basis of the facts as the plaintiff has presented them."  Owen v. United States, 851 F.2d 1404, 1407 (Fed. Cir. 1988).  "[E]ach of the well-pled allegations in the complaint[] is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs."  Atlas Corp. v. United States, 895 F.2d 745, 749 (Fed. Cir. 1990).  The court does not accept, however, "assertions in the pleadings that amount to legal conclusions."  J.M. Huber Corp. v. United States (J.M. Huber), 27 Fed. Cl. 659, 661 (1993).

   B.     Controlling Precedent Exists for This Case

In defendant's Motion, defendant argues that "according to binding precedent, plaintiffs are not entitled to compensation under the FLSA for time spent solely driving between home and work in a Government vehicle."  Def.'s Mot. 5.  Plaintiffs respond that Adams II is not controlling because the decision of the Federal Circuit was incorrect, is

no longer valid, or is distinguishable from this case. See Pls.' Resp. passim. For the following reasons, the court fails to find merit in any of plaintiffs' arguments, and therefore finds that Adams II is applicable to this case and binding upon this court.

The term "precedent" is defined by Black's Law Dictionary as "[a] decided case that furnishes a basis for determining later cases involving similar facts or issues." Black's Law Dictionary 1214 (8th ed. 2004). "Binding precedent" is defined as "[a] precedent that a court must follow." Id. at 1215. The precedent of the Supreme Court and the Federal Circuit is binding upon the USCFC. See Coltec Indus. v. United States (Coltec), 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court [the Federal Circuit], and our predecessor court, the Court of Claims."). This binding precedent includes the manner in which the Supreme Court and the Federal Circuit interpret statutes and administrative regulations. Passamaquoddy Tribe v. United States (Passamaquoddy Tribe), 82 Fed. Cl. 256, 261-62 (2008) ("The United States Court of Appeals for the Federal Circuit has ruled that this court must not engage in a de novo interpretation of statutes . . . ; rather, it should carefully follow the binding precedent in this circuit as to the meaning of . . . relevant statutory terms."). Accordingly, this court is bound to follow the statutory interpretations of the Supreme Court and the Federal Circuit, even if this court, on its own, would not interpret a statute in the same manner. See Crowley v. United States (Crowley), 398 F.3d 1329, 1335 (Fed Cir. 2005). The Crowley court held:

> [T]he Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court. Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court.[2]

---

[2] In Southern California Edison Co. v. United States (So. Cal. Edison), 38 Fed. Cl. 54 (1997), the United States Court of Federal Claims held that it was not the proper forum to reexamine a jurisdictional issue relating to third party defendants that the United States Court of Appeals for the Federal Circuit (Federal Circuit) had already ruled upon. So. Cal. Edison, 38 Fed. Cl. at 62. The court stated:

> The third-party defendants urge the court to reexamine this issue. However, this is not the proper forum for that purpose. If the issue does warrant a second look, that is a reexamination only the court of appeals may undertake. So
> (continued...)

5

Id. Therefore, unless the facts of this case are distinguishable from the facts in Adams II, or unless there has been a change in the applicable law, the Federal Circuit's interpretation of the FLSA and the exception to the FLSA created by the Portal-to-Portal Act, as analyzed in Bobo and Adams II, control this case.

    1.       The Scope of the Contested Facts

As an initial matter, the court considers the scope of the issues in defendant's Motion. The parties are in the process of settling all claims "other than claims for home-to-work driving time." JSR 2; see supra Part I. The court, therefore, will review only the facts related to the time when plaintiffs are in their government-issued vehicles, driving to and from work. All other claims, including claims that might arise out of activities alleged to have been carried out for the employer's benefit before driving or after driving, are in the process of settlement and are therefore not taken into account in this opinion. See id.

Employees' claims for compensation for time spent driving to and from work were the only claims at issue in the Adams litigation. See Adams I, 65 Fed. Cl. at 231 ("The only type of claim addressed in defendant's 2002 motion is commuting time claims while driving a government vehicle to and from work . . . .") (emphases added); id. at 240 ("The only type of claim addressed in defendant's 2004 motion is commuting time claims for '"time solely spent driving"' a government vehicle to and from work . . . .") (emphases added) (citations omitted). Because the only claims before the court, both here and in the Adams litigation, are those related to "time solely spent driving" a government vehicle to and from work, the court finds the only facts relevant to this decision to be the facts directly related to the plaintiffs' "commuting time" or "driving time."

    2.       The Facts of This Case Are Indistinguishable from the Facts of Adams II

Plaintiffs argue that, based upon distinguishing law and facts, "defendant is not entitled to the RCFC 12(c) judgment on the pleadings." Pls.' Resp. 1. Plaintiffs also claim that "home/work driving is 'integral and indispensable,'" id. at 2 (discussing the

---

    [2](...continued)
    far as this court is concerned, it must accept the [Federal Circuit] decision as
    controlling precedent . . . .

Id.

application of 29 U.S.C. § 254(a)(2006)), to the performance of plaintiffs' duties and state that their claim is a "mixed question of law and fact which presents a triable issue thus precluding judgment on the pleadings"). However, plaintiffs' Response does not attempt to distinguish the facts in this case from the facts in Adams II or Bobo. See Pls.' Resp. passim. Instead, plaintiffs make broad and general claims that are akin to legal conclusions for example, that plaintiffs' driving is "required by their employer, and is necessary for the performance of plaintiffs' duties." Id. at 29; see J.M. Huber 27 Fed. Cl. at 661 (noting the that the court does not need to accept "assertions in the pleadings that amount to legal conclusions" in a motion for judgment on the pleadings). Plaintiffs also claim that their driving is not "'predominantly . . . in [their] own interests,'" and is therefore compensable under the FLSA. Id. (quoting Dunlop v. City Elec., Inc., 527 F.2d 394, 398 (5th Cir. 1976) (citation omitted)).

It appears to the court that the facts in this case are that plaintiffs, as government employees, are required to drive government vehicles to and from work every day. See Pls.' Resp. 2. Plaintiffs allege that they are engaged in "'field work'" that is somehow different from the work involved in Adams II. See Pls.' Resp. 2. In Adams II, the Federal Circuit described the facts of that case as follows:

> The plaintiffs are issued <u>government-owned police vehicles</u> and required as a condition of their employment <u>to commute from home to work in those vehicles</u>. This requirement facilitates their employers' law enforcement missions, since the cars will be available to the officers for rapid response to emergency calls at any time . . . . The officers' time is not entirely their own during their commutes: <u>they are required to have their weapons and other law enforcement-related equipment and to have on and monitor their vehicles' communication equipment. They are not allowed to run any personal errands in their government vehicles</u>, so their commute must proceed directly from home to work and back again without any unauthorized detours or stops.

Adams II, 471 F.3d at 1323 (emphases added). Plaintiffs have not alleged any activity that differs from the activities of the plaintiffs in Adams II. See Pls.' Resp. passim. The Adams II plaintiffs were required to transport equipment and to maintain contact with their employers and were prohibited from making any personal stops while commuting. See Adams II, 471 F.3d at 1323. In this case plaintiffs have made only conclusory allegations about the amount of work performed during home to work driving. Plaintiffs do not asset facts; rather, plaintiffs assert as facts phrases that are used by courts to state the legal conclusion that a compensable claim exists. See Pls.' Resp. 2 (asserting that home to work driving is "'integral and indispensable'" to their work); id. at 29 (asserting

7

that home to work driving is "not undertaken for the employees' convenience, is required by their employer, and is necessary for the performance of plaintiffs' duties"); J.M. Huber 27 Fed. Cl. at 661 (noting the that the court does not need to accept "assertions in the pleadings that amount to legal conclusions" in a motion for judgment on the pleadings). The court sees no factual differences between this case and Adams II such that Adams II would not be controlling precedent governing the outcome of plaintiffs' driving claims.

        3.       The Singh Case in the United States Court of Appeals for the Second Circuit Does Not Affect Controlling Federal Circuit Precedent

Plaintiffs attempt to distinguish this case from Singh v. City of New York (Singh), 524 F.3d 361 (2d Cir. 2008), a recent decision by the United States Court of Appeals for the Second Circuit (Second Circuit), Pls.' Resp. 18-19.  In Singh, New York City required its fire alarm inspectors (the inspectors) to carry necessary inspection files to and from work with them every day.  Singh, 524 F.3d at 365.  The documents were kept in a briefcase and weighed fifteen to twenty pounds.  Id.  The inspectors "assert[ed] that carrying and keeping safe [those] inspection files affect[ed] their commutes in various ways and that they should therefore [have been] compensated for their time and effort."  Id.  For example, two plaintiffs testified that "carrying documents caused them occasionally to miss a bus or train."  Id.  Another plaintiff testified that "the briefcase slowed his commute by 'give or take' ten minutes."  Id.  Still other plaintiffs testified "that keeping the documents safe after work hours was inconvenient, preventing them from attending social events because they had to go directly home in order to ensure the safety of the documents."  Id.

The Second Circuit held that the inspectors were not required to be compensated pursuant to the FLSA for time spent commuting to and from work, even though they were required to carry and keep safe inspection documents during those times.  Id. at 364 (holding that "the mere carrying of inspection documents without any other active employment-related responsibilities while commuting is not work under the FLSA, except to the extent that it increases the duration of the commute" and finding that the increase in commuting time was de minimis).  In reaching this decision, the Second Circuit examined (1) if the carrying of the briefcase constituted "work" under the FLSA, id. at 367, and (2) whether carrying of the briefcase was an "integral and indispensable part of their inspecting duties," id. at 367-68.  The Second Circuit based its determination of whether the inspectors' expenditure of time on their commute was work upon an analysis of "whether that time [was] spent predominantly for the benefit of the employer or the employee."  Id. at 368.  The Second Circuit found that "[w]hether it be reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do, their use of the commuting time is materially unaltered [by having to carry the inspection

documents]." Id. Therefore, "While the City certainly benefits from the plaintiffs' carrying these [inspection documents], it cannot be said that the City is the predominant beneficiary of [the commuting] time." Id. at 368-69. For this reason, the Second Circuit held that "under the circumstances presented in this case, the carrying of a briefcase during a commute without any other employment-related activity does not transform the entire commute into work for purposes of the FLSA." Id. at 370.

Plaintiffs submit that the Second Circuit's analysis that the inspectors reaped the predominant benefit of the commuting time in the circumstances of that case "distinguishes [this] . . . case from Singh, and places the plaintiffs' driving in the category of FLSA compensable work." Pls.' Resp. 18 (footnote omitted). Plaintiffs contend that they can demonstrate that "their driving has been controlled and directed by defendant and has been engaged in for its benefit." Id. at 19. However, identical findings were made in Adams II and Bobo, both holding plaintiffs' driving to be non-compensable work despite the fact that it was controlled and directed by their employers and done for their employer's benefit, see Adams II, 471 F.3d at 1328 ("Bobo still teaches that commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimis. That is the case here."); Bobo, 136 F.3d at 1468 (holding INS agents' commutes noncompensable, stating "[W]e accept as true that the restrictions placed upon the INS Agents' commutes are compulsory, for the benefit of the INS, and closely related to the INS Agents' principal work activities. However, the burdens alleged are insufficient to pass the de minimis threshold.").

While the law of the Federal Circuit is binding upon this court, "decisions of other federal appellate courts, while 'afforded great weight,' are not binding on the . . . Court of Federal Claims." Taylor v. United States, 73 Fed. Cl. 532, 541 n.18 (2006) (quoting Bankers Trust N.Y. Corp. v. United States, 225 F.3d 1368, 1371 (Fed. Cir. 2000)). Therefore, even if the factual contours of the de minimis test utilized by the Second Circuit in Singh are distinguishable from the contours of the de minimis test utilized by the Federal Circuit, that circumstance does not govern the disposition of plaintiffs' driving claims in this case. Because plaintiffs' driving claims are substantially factually identical to the claims in Adams II and Bobo, they are controlled by Federal Circuit precedent.

    4.    There Has Been No Change in the Applicable Law Since the Federal Circuit's Decision in Adams II

Plaintiffs also argue that the Federal Circuit's decision in Adams II is not controlling in this case because "the reasoning in Adams [II] has been . . . nullified by the

9

Supreme Court's decisions in . . . <u>Coke</u> . . . and <u>National Cable</u>." Pls.' Resp. 4. It is plaintiffs' contention that these two Supreme Court decisions have altered the law, thereby vitiating the precedential value of <u>Adams II</u>. <u>See</u> Pls.' Resp. 4-8. However, <u>National Cable</u> was decided prior to <u>Adams II</u> and neither case dealt with the question of whether time spent driving between home and work constitutes compensable hours under the FLSA. <u>See</u> <u>National Cable</u>, 545 U.S. at 967-1020; <u>Coke</u>, 127 S. Ct. 2339-52.

    a.    The Supreme Court's Decision in <u>Coke</u> Did Not Change the Applicable Substantive Law for "Time Worked" Under the FLSA

The question of whether driving was compensable as "time worked" under the FLSA was not the question before the Court in <u>Coke</u>. <u>See</u> <u>Coke</u>, 127 S. Ct. passim. The question before the Court in <u>Coke</u> was whether a Department of Labor (DOL) regulation governing an FLSA exemption for home health care workers was valid and binding "in light of [its] text and history, and a different (apparently conflicting) [DOL] regulation." <u>Coke</u>, 127 S. Ct. at 2344 (citing <u>Chevron U.S.A. Inc. v. NRDC, Inc.</u> (<u>Chevron</u>), 467 U.S. 837 (1984)) . In <u>Coke</u>, the plaintiff was an employee of Long Island Care at Home, Ltd. (Long Island Care). <u>Id.</u> at 2345. The plaintiff "provide[d] 'companionship services' to elderly and infirm men and women." <u>Id.</u> The case arose when the plaintiff brought suit against Long Island Care seeking judgment for unpaid wages to which she believed herself entitled pursuant to the FLSA. <u>Id.</u> The issue in <u>Coke</u> was whether an FLSA exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves" applied to a home health care worker employed by a third party agency. <u>Id.</u> at 2344 (quoting 29 U.S.C. § 213(a)(15)). The DOL regulation interpreting this exemption stated that "exempt companionship workers include those 'who are employed by an employer or agency other than the family or household using their services . . . [whether or not] such an employee [is assigned] to more than one household or family in the same workweek . . . .'" <u>Id.</u> at 2345 (quoting 40 Fed. Reg. 7,407 (1975) (codified at 29 C.F.R. § 552.109(a) (2008))) (alterations in original).

The Second Circuit had held that the DOL regulation was "unenforceable" based upon its "content, its method of promulgation, and its context." <u>Id.</u> at 2346. Because the Second Circuit determined that the FLSA exemption may not apply to home health care workers, the Second Circuit set aside the district court's initial dismissal of the suit. <u>Id.</u> at 2344. The Supreme Court "vacated the Second Circuit's decision and remanded the case so that the Circuit could consider a recent DOL 'Advisory Memorandum' explaining (and defending) the regulation." <u>Id.</u> at 2345. However, the Second Circuit again held the regulation to be unenforceable, and the Supreme Court granted certiorari. <u>Id.</u>

After hearing arguments on the merits, the Supreme Court reversed, based upon an application of the standard for deference to agency interpretations of statutes articulated in Chevron. See Coke, 127 S. Ct. at 2345-46. The Court stated, "We have previously pointed out that the '"power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress,"'" and that "[w]hen an agency fills such a 'gap' reasonably, and in accordance with other applicable (e.g., procedural) requirements, the courts accept the result as legally binding." Id. at 2345-46 (quoting Chevron, 467 U.S. at 843-44) (citations omitted). The Court found that Congress explicitly left gaps in its FLSA provisions, and that Congress authorized DOL "to fill [those] gaps with rules and regulations." Id. at 2346 (citations omitted). Further, the Court found that the "subject matter of the regulation in question concerns a matter in respect to which the agency is expert, and it concerns an interstitial matter, . . . the details of which . . . Congress entrusted the agency to work out." Id. Finally, the Court found that DOL met all procedural requirements in promulgating the regulation because "[i]t gave notice, it proposed regulations, it received public comment, and it issued final regulations in light of that comment." Id.

The plaintiff in Coke argued that, notwithstanding the facial adherence of the regulation to the Chevron standard, the regulation should be unenforceable because it "[fell] outside the scope of Congress' delegation; . . . [was] inconsistent with another, legally governing regulation; . . . [was] an 'interpretive' regulation not warranting judicial deference; and . . . was improperly promulgated." Id. The Court rejected each of these arguments in turn and held that, because the third party regulation by DOL was within the scope of the statute's delegation, was perfectly reasonable, and otherwise complied with the law, it was legally binding. See Coke, 127 S. Ct. at 2346-52.

Coke dealt specifically with whether or not a certain DOL regulation (not involving commuting time) was valid and enforceable. The court does not perceive how the disposition of Coke has any bearing upon the substantive law of whether or not driving an employer's vehicle between home and work constitutes compensable work under the FLSA and the Portal-to-Portal Act.

> b.   Even if Adams II Did Not Give Proper Chevron Deference to OPM Regulations, This Court Would Still Be Bound by Federal Circuit Precedent

Plaintiffs argue that the Federal Circuit did not give proper deference to agency regulations. See Pls.' Resp. 16 ("On this basis plaintiffs submit that just as was the case in Coke . . . this Court is obligated to defer to [Office of Personnel Management (OPM)] regulations, rather than to the contrary rulings of the Federal Circuit, and that on their

face these regulations will require this Court to declare plaintiffs' home/driving compensable under the FLSA . . . ."").[3] Coke does not require this court to ignore Adams II because the Federal Circuit did not give the proper deference to agency regulations under the Chevron standard.

First, plaintiffs have not proven that the Adams II court failed to take into account the relevant OPM regulations in adjudicating that case or that–if it had–it would have reached a different conclusion. In Bobo, the precedent upon which the Adams II court based its decision, the Federal Circuit cited to the very same OPM regulations which plaintiffs argue are controlling in this situation:

> The FLSA, as interpreted by [OPM] regulations, requires federal agencies to pay employees for "[a]ll time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency." 5 C.F.R. § 551.401(a) (1997). However, the Portal-to-Portal Act, which amended the FLSA, creates an exception to this general rule . . . .

---

[3] The Office of Personnel Management (OPM) guidelines that plaintiffs believe should apply are §§ 551.401(a) and 551.422(a)(2) of Title 5 of the Code of Federal Regulations regarding "Hours of Work." See Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings, Dismissing "Driving Time" Claims (plaintiffs' Response or Pls.' Resp.)14-16. Section 551.401(a) provides:

> All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is "hours of work." Such time includes: (1) Time during which an employee is required to be on duty; (2) Time during which an employee is suffered or permitted to work; and (3) Waiting time or idle time which is under the control of an agency and which is for the benefit of an agency.

5 C.F.R. § 551.401(a) (2008). Section 551.422, entitled "Time spent traveling," provides, "Time spent traveling shall be considered hours of work if: (1) An employee is required to travel during regular working hours; (2) An employee is required to drive a vehicle or perform other work while traveling . . . ." 5 C.F.R. §§ 551.422(a). However, plaintiffs do not cite to another, possibly applicable provision, section 551.422(b), which states, "An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal 'home to work' travel; such travel is not hours of work." 5 C.F.R. § 551.422(b) (emphasis added).

12

Bobo, 136 F.3d at 1467 (emphases added).  The Federal Circuit took note of the regulations but determined that they were not controlling in the context of compensation for time spent driving government vehicles to and from work because of an exception expressed in the Portal-to-Portal Act.  Id. at 1467-68.  The Portal-to-Portal Act was amended by the Employee Commuting Flexibility Act of 1996, Adams I, 65 Fed. Cl. at 224, and now states, in relevant part:

> [N]o employer shall be subject to any liability or punishment under the [FLSA] . . . [for] failure . . . to pay an employee minimum wages, or to pay an employee overtime compensation, for . . . (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities . . . .  For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (emphases added).  Further, the USCFC specifically discussed and rejected plaintiffs' arguments relating to these OPM regulations in Adams I.  Adams I, 65 Fed. Cl. at 239 ("Plaintiffs also allege that a variety of regulations . . . support compensability of the commuting time claims here.  Plaintiffs' citations to regulations include 5 C.F.R. §§ 551.401 [and] 551.422 . . . .  However, [neither] of these regulations [is] directly on point for the commuting time claims alleged here.").  Because OPM's regulations relied on by plaintiffs were examined and rejected by the courts in both Bobo and Adams I, it is unlikely that the court in Adams II failed to give them the proper deference under the Chevron standard.

      Second, even if the Federal Circuit had failed to give OPM regulations the proper Chevron deference in Adams II, its decision would still be binding upon this court.  Plaintiffs argue that this court should abstain from following the precedent of the Federal Circuit, because, plaintiff alleges, the Federal Circuit was incorrect in its interpretation of the FLSA and Portal-to-Portal Act when it failed to defer to OPM regulations.  Pls.' Resp. 16-17.  But this contention is wrong.  Coltec, 454 F.3d at 1353 ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, [the Federal Circuit], and . . . the Court of Claims."); Crowley, 398 F.3d

at 1335 ("Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court."); Passamaquoddy Tribe, 82 Fed. Cl. at 261-62 ("The United States Court of Appeals for the Federal Circuit has ruled that this court must not engage in a de novo interpretation of statutes . . . ; rather, it should carefully follow the binding precedent in this circuit as to the meaning of . . . relevant statutory terms.").

        c.       National Cable Is Distinguishable from This Case and Therefore Does Not Overrule the Controlling Precedent of Adams II

Plaintiffs also cite to National Cable, 545 U.S. at 967, to support their assertion that Adams II is not binding upon this court in this case. Pls.' Resp. 5-8. Plaintiffs deploy National Cable for the proposition that stare decisis does not trump an administrative agency's interpretation of an ambiguous rule. See id. at 5-8, 32-34. National Cable involved a dispute regarding the classification of cable companies that sold broadband internet service pursuant to Title II of the Communications Act of 1934, as amended by the Telecommunications Act of 1996 (Communications Act), Pub. L. No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of 47 U.S.C.). National Cable, 545 U.S. at 973-74. The Federal Communications Commission (FCC) independently determined that these companies did not provide a "telecommunications service" as the Communications Act defines the term, see 47 U.S.C. § 153(46), and that the companies were therefore not subject to certain regulations applicable to providers of that service, National Cable, 545 U.S. at 977-78. The United States Court of Appeals for the Ninth Circuit (Ninth Circuit) disagreed, holding that the conclusion of the FCC was an impermissible construction of the term "telecommunications service" and therefore not legally binding. Id. at 979-980. According to the Supreme Court, "Rather than analyzing the permissibility of that construction under the deferential framework of [Chevron], . . . the [Ninth Circuit] grounded its holding in the stare decisis effect of AT&T Corp. v. Portland [(Portland)], 216 F.3d 871 (9th Cir. 2000)." Id. at 979 (discussing the Ninth Circuit's decision in Brand X Internet Services v. FCC, 345 F.3d 1120 (9th Cir. 2003)). Portland had "held that cable modem service was a 'telecommunications service.'" Id. (quoting Portland, 216 F.3d at 877-880). The Supreme Court reversed the Ninth Circuit's decision, finding that Chevron provided the appropriate analytical framework and that the Ninth Circuit should have applied that framework rather than following the contrary construction the Ninth Circuit itself had applied in Portland. Id. at 982 ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from unambiguous terms of the statute and thus leaves no room for agency discretion.").

14

The Portland decision relied on by the Ninth Circuit had been issued in 2000, while the FCC's contrary regulation was not put into effect until March 2002. See id. at 977, 980. Therefore, by rejecting the interpretation of the FCC on the grounds of stare decisis, the Ninth Circuit was, in effect, barring the agency designated by Congress to enforce legislation from interpreting that legislation in light of its expertise. The Court expressed concern that Ninth Circuit's rule "would 'lead to the ossification of large portions of our statutory law' . . . by precluding agencies from revising unwise judicial constructions of ambiguous statutes." Id. at 983 (quoting United States v. Mead Corp., 533 U.S. 218, 247 (2001)). National Cable therefore held that the judicial construction of a statute does not bar subsequent interpretation by an administrative agency unless the judicial construction held that the statute was unambiguous. See id. If an administrative agency authorized by Congress to interpret and enforce legislation arrives at an interpretation of that legislation that is different from an earlier court interpretation, the court cannot automatically strike it down, but must instead analyze the agency's later interpretation under the Chevron framework. See id. at 983-85.[4]

The issues in this case are not the same issues contested in National Cable. This is not a case in which OPM enacted new regulations interpreting the FLSA after the Federal Circuit had decided Bobo and Adams II. The OPM regulations referred to by plaintiffs were enacted in 1980. See Pls.' Resp. 17 ("[O]n December 30, 1980, after notice and comment regarding its proposed FLSA regulations, 45 Fed. Reg.[]49[,]580 (July 25, 1980), OPM issued its final FLSA regulations."). The court in Bobo took note of them and chose not to follow them because of the Portal-to-Portal Act exception to the FLSA. See Bobo, 136 F.3d at 1467. Therefore, the Federal Circuit's adherence to the rule of stare decisis in Adams II was not contrary to the Supreme Court's holding in National Cable because the Federal Circuit did not ignore OPM interpretations of a government regulation made after the Federal Circuit had decided Bobo. Likewise, this court would not be violating the rule of National Cable by following Adams II because plaintiffs do not rely on a new OPM regulation interpreting home to work driving under the FLSA issued subsequent to that decision. Because the issues in National Cable are readily

---

[4] The United States Court of Appeals for the First Circuit (First Circuit) case of Dominion Energy Brayton Point, LLC v. Johnson (Dominion Energy), 443 F.3d 12 (1st Cir. 2006), helps to clarify this rule. In Dominion Energy, the First Circuit applied the rule from National Cable & Telecommunications Ass'n v. Brand X Internet Services (National Cable), 545 U.S. 967 (2005), to hold that an Environmental Protection Agency (EPA) regulation promulgated in 2000 must be given Chevron deference and therefore overruled the Circuit's own 1978 interpretation of a statutory jurisdictional requirement needed to bring a citizen's suit. See Dominion Energy, 443 F.3d at 16-18.

15

distinguishable from the issues in this case, the court fails to see how the Supreme Court's decision in National Cable could vitiate the binding precedent of Adams II.[5]

        d.      Neither AARP II Nor Fuller Authorizes the Court to Disregard Controlling Precedent Set Forth by the Federal Circuit

Plaintiffs argue that AARP v. EEOC (AARP II), 390 F. Supp. 2d 437 (E.D. Pa. 2005) "stands for the proposition that where a district court has found that a circuit court's prior judicial interpretation of a rule foreclosed deference to the agency, . . . the court may . . . hold the prior judicial determination to be non-binding . . . and give broad deference to an agency's rule[-]making authority." Pls.' Resp. 10. Plaintiffs also claim that the district court's decision in Fuller v. Teachers Insurance Co. (Fuller), No. 5:06-cv-00438-F, 2007 U.S. Dist. LEXIS 69845 (E.D.N.C. Sept. 19, 2007), "demonstrates the leeway that [National Cable] provides to district courts as interpreters of the law." Pls.' Resp. 13.

In AARP II, the non-profit organization AARP filed suit against the United States Equal Employment Opportunity Commission (EEOC), challenging a regulation that "would exempt certain employer practices from the Age Discrimination in Employment Act." AARP II, 390 F. Supp. 2d at 441. Earlier, the district court had granted summary judgment to the plaintiffs, AARP v. EEOC (AARP I), 383 F. Supp. 2d 705, 712 (E.D. Pa. 2005), but the EEOC moved for relief from that judgment "as a result of the Supreme Court's . . . decision in [National Cable]." AARP II, 390 F. Supp. 2d at 441. The district court granted the motion by the EEOC, holding that, although the regulation was contrary to the statute as previously construed by the Third Circuit, the regulation was still valid because the Third Circuit neither held its interpretation of the statute to be the only permissible interpretation nor addressed whether the agency interpretation as embodied in the challenged regulation was a permissible interpretation. See id. at 448. The district court came to this conclusion by relying on National Cable, which the district court claimed to stand for the proposition that "where a court's holding states merely the 'best' interpretation of a statute, not the 'only permissible' interpretation, the court decision

---

[5] It is also clear that National Cable has not changed the applicable substantive law regarding what is compensable as "time worked" under the FLSA since the time that the Federal Circuit decided Adams v. United States (Adams II), 471 F.3d 1321 (Fed. Cir. 2006). Not only was National Cable was decided in 2005, prior to the Federal Circuit's decision in Adams II, compare National Cable, 545 U.S. at 967 with Adams II, 471 F.3d at 1321, but it also deals with provisions of the Telecommunications Act and decisions by the Federal Communications Commission rather than the FLSA or Office of Personnel Management regulations, National Cable, 545 U.S. at 967.

16

does not foreclose a later, differing agency interpretation." Id. (citing National Cable, 545 U.S. at 983).

The situation in Fuller is similar to that in AARP II. The plaintiffs in Fuller claimed that an insurance company unlawfully discriminated against them in violation of the Fair Housing Act of 1968. Fuller, 2007 U.S. Dist. LEXIS 69845 at *1-*2. The defendant in Fuller argued that Mackey v. Nationwide Insurance Cos. (Mackey), 724 F.2d 419 (4th Cir. 1984), was controlling United States Court of Appeals for the Fourth Circuit precedent. Fuller, 2007 U.S. Dist. LEXIS 69845 at *7. Mackey held that the Fair Housing Act was not applicable to the insurance industry. Id. at *16. However, the Fuller court relied on National Cable, and found that a regulation issued after Mackey by the United States Department of Housing and Urban Development (HUD) enabled individuals to sue insurance companies for violations of the Fair Housing Act. Id. at *17.

Plaintiffs' reliance on AARP II and Fuller is misplaced. Plaintiffs do not allege a conflict between the interpretation of the FLSA by the Federal Circuit and the interpretation embodied in the applicable agency regulations. Rather, plaintiffs disagree with the interpretation of the FLSA as set forth by the Federal Circuit in Adams II. Plaintiffs appear to be asking the court to defer to plaintiffs' own interpretation of the applicable regulations and to the statutory interpretation that plaintiffs read into those regulations. AARP II and Fuller do not support plaintiffs' claim that the court may disregard precedent from the Federal Circuit in order to adopt the interpretation of the regulations that plaintiffs favor.

Further, in AARP II, Fuller and National Cable, the courts were presented with an action by the relevant agency after the judicial precedent in question had been set. The underlying question in each of those cases, therefore, was whether a permissible agency interpretation of a statute trumps a prior judicial interpretation or vice versa. Neither case addressed the binding effect of decisions by an appellate court regarding statutory interpretation when the appellate court has before it the agency regulation in question. Here, the Federal Circuit has previously examined and ruled on the interpretation of the FLSA with regard to driving time: time solely spent driving a government vehicle to and from work is not compensable. Adams II, 471 F.3d at 1325. Plaintiffs have not presented any precedent, and the court does not know of any, in which a trial court may disregard an interpretation of a statute by the appellate court by whose precedents the trial court is bound. Even if AARP II or Fuller could be construed as supporting the view that a trial court may reject the precedent set forth by its appellate court, this court must follow Federal Circuit precedent, not the views of judges in the Eastern District of Pennsylvania or the Eastern District of North Carolina.

      5.      The Federal Circuit's Decision in <u>Billings</u> Does Not Obligate This Court to Ignore the Precedent of <u>Adams II</u> and Defer to DOL FLSA Regulations.

Plaintiffs also argue that the Federal Circuit's decision in <u>Billings v. United States</u> (<u>Billings</u>), 322 F.3d 1328 (Fed. Cir. 2003), obligates this court to defer to DOL regulations. See Pls.' Resp. 19-22 ("Plaintiffs submit that consistency with DOL's position requires this Court to declare plaintiffs' driving to be FLSA compensable."). In <u>Billings</u>, employees of the United States Border Patrol challenged an OPM regulation governing an FLSA exemption for "executive" employees on the grounds that it was in conflict with the definition of "executive" under DOL regulations. <u>Billings</u>, 322 F.3d at 1330. The Federal Circuit held that, while OPM regulations were required to harmonize with DOL regulations, there could be differences between the two if the variance was both reasonable and necessary "to accommodate the difference between private and public sector employment." <u>Id.</u> at 1334. The <u>Billings</u> court determined that the differences with respect to the "executive employee" exemption met the relevant criteria and that OPM's regulation was therefore valid. <u>Id.</u> The court does not perceive how the Federal Circuit's decision in <u>Billings</u> could control the outcome of this case. The decision in <u>Billings</u> was based upon the exemption for "executive" employees in OPM regulations, not a regulation related to whether driving to and from work in a government-owned vehicle is compensable under the FLSA. <u>See id. passim</u>.

      6.      Plaintiffs' Contention That the ECFA Supports Its Position Is Misplaced

Plaintiffs contend that the ECFA supports its position. Pls.' Resp. 22. The ECFA was an amendment to the Portal-to-Portal Act. The relevant section of the ECFA states:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel <u>is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee</u>.

29 U.S.C. § 254(a). Plaintiffs state that "plaintiffs never agreed to waive their FLSA overtime compensation." Pls.' Resp. 24. They argue that, in the absence of an agreement, home to work driving should be compensable work. <u>Id.</u> at 24-25.

18

However, the Federal Circuit has not adopted plaintiffs' argument. Even plaintiffs recognize that the Federal Circuit in Adams II analyzed 29 U.S.C. § 245(a) and did not conclude that home to work driving was compensable. See id. at 25 ("[N]othing in the language of ECFA supports the Federal Circuit's conclusion [that the ECFA does not apply] since the critical issue . . . is the presence of 'an agreement' between the parties waiving compensation for driving."). However, after reviewing 29 U.S.C. 254(a), the Federal Circuit concluded:

> Therefore, merely commuting in a government-owned vehicle is insufficient; the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving.

Adams II, 471 F.3d at 1325. The Federal Circuit acknowledged that the ECFA contained agreement language, but did not base its decision on it. Accordingly, the court must follow the binding precedent of Adams II.

   7.   The Doctrine of Stare Decisis Does Not Change the Outcome of This Case

Plaintiffs argue that stare decisis does not apply because "'the doctrine of stare decisis applies only to legal issues and not issues of fact.'" Pls.' Resp. 32 (quoting Aves. in Leather, Inc. v. United States, 423 F.3d 1326, 1331 (Fed. Cir. 2005)). Stare decisis is "[t]he doctrine of precedent, under which it is necessary for a court to follow earlier judicial decisions when the same points arise again in litigation." Black's Law Dictionary 1443 (8th ed. 2004). Plaintiffs also quote comments by Chief Judge Michel of the Federal Circuit about the precedential effect of a panel decision on the decisions of subsequent panels. Pls.' Resp. 33. These comments address the effect of stare decisis on different panels of the Federal Circuit, not on the obligation of lower courts to follow the decisions of appellate courts. See id. This court is bound by Federal Circuit precedent. See supra Part II.B. Plaintiffs have adduced no material factual differences between Adams II and this case. See supra Part II.B.1-2. Accordingly, the doctrine of stare decisis mandates that this court follow the Federal Circuit.

   8.   The Denial of Writ of Certiorari and Petition for Rehearing En Banc in
        Adams II Do Not Change the Outcome of This Case

In support of their position, plaintiffs point out that the denial of certiorari by the Supreme Court and the denial of a petition for rehearing en banc by the Federal Circuit do not indicate that Adams II has been affirmed by the Supreme Court or the Federal Circuit en banc. Pls.' Resp. 34-35. The court agrees, but plaintiffs' observations are irrelevant to

19

the outcome of this case. "A prior precedential decision on a point of law by a panel of [the Federal Circuit] is binding precedent and cannot be overruled or avoided unless or until the court sits en banc." Preminger v. Sec'y of Veterans Affairs, 517 F.3d 1299, 1309 (Fed. Cir. 2008) (citing Sacco v. Dep't of Justice, 317 F.3d 1384, 1386 (Fed. Cir. 2003)). Neither the fact that the Supreme Court denied certiorari to the Adams II decision nor the fact that the Federal Circuit declined to reconsider Adams II en banc changes the fact that Adams II is binding upon this court.

III.    Conclusion

Plaintiffs have argued that the precedents of Adams II and Bobo are not controlling because this case involves distinguishable facts, because the applicable law has changed, and because the Federal Circuit was incorrect in its FLSA interpretation in Adams II and Bobo. See Pls.' Resp. passim. Because the facts of this case are substantially identical to those in Adams II, and because there has been no change in the applicable law governing what constitutes "time worked" under the FLSA, this court follows the Federal Circuit precedent as to whether the FLSA requires employees to be compensated for driving between home and work in a government-owned vehicle. See Coltec, 454 F.3d at 1353 ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court [the United States Court of Appeals for the Federal Circuit], and our predecessor court, the Court of Claims.") (citations omitted). Based upon the precedent of Adams II, defendant is entitled to judgment on the pleadings. See Adams II, 471 F.3d at 1328 ("[C]ommuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimis."). Defendant's Motion is GRANTED as to home to work driving.

    IT IS SO ORDERED.

                                                s/Emily C. Hewitt
                                                EMILY C. HEWITT
                                                Judge